UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

HENRY PENA NUNEZ,

Petitioner,

v.

JEREMY CASEY, Facility Administrator at the Imperial Regional Detention Facility, PATRICK DIVVER, Director of the U.S. Immigration and Customs Enforcement San Diego Field Office, DAVID VENTURELLA, Acting Director of U.S. Immigration and Customs Enforcement, and MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security,

Respondents.

Case No.: 3:26-cv-5796-JES-GC

**ORDER GRANTING PETITION FOR HABEAS CORPUS**

**[ECF No. 1]**

Before the Court is Petitioner Henry Pena Nunez' ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), filed on October 9, 2026. ECF No. 1 ("Pet."). Pursuant to the Court's order to show cause, Respondents filed a Return to the petition (ECF No. 6, "Return") and Petitioner filed a Traverse (ECF No. 7, "Trav."). For the reasons set forth below, the Court **GRANTS** the petition.

## I. BACKGROUND

Petitioner entered the United States on or about September 21, 2023, near El Paso, Texas, where he was subsequently detained. Return at 2. Petitioner was processed, served with a Notice to Appear, and charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* After several weeks of detention, Petitioner was released on conditional parole on October 16, 2023. *Id.*

Petitioner was then allowed to remain at liberty in the United States for approximately two-and-a-half years, whereupon he settled in Calexico, California, pursued an asylum claim, and obtained employment authorization and a social security card. Pet. ¶¶ 21–22. Petitioner alleges that he complied with all immigration laws during this period. *Id.* ¶ 27.

On March 22, 2026, the Imperial County Sheriff's Office arrested Petitioner on challenges of misdemeanor battery, felony vandalism, and felony child abuse "under circumstances likely to result in great bodily harm or death." Return at 2; *see also* Cal. Penal Code § 273a(a). Respondents subsequently sought a detainer pursuant to the Laken Riley Act, and Petitioner was transferred to DHS custody on March 25, 2026. Return at 2. Petitioner is presently detained at Imperial Regional Detention Facility. Pet. ¶ 12.

A merits hearing on Petitioner's asylum application was held on July 15, 2026. *Id.* ¶ 25. The IJ denied relief, and Petitioner's appeal of that decision remains pending. *Id.*

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in

that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

### A. Detention Under § 1226(c)(1)(E)

Enacted as part of the Laken Riley Act in 2025, Section 1226(c)(1)(E) requires the Attorney General to detain any alien who "(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section [1182(a)]; and (ii) is charged with, is arrested for, … any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E). Thus, Section 1226(c)(1)(E) includes two prongs, both of which must be satisfied to authorize mandatory detention: first, a finding of inadmissibility under one of the listed provisions, and second, a qualifying action related to a qualifying crime.

Respondents argue that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1226(c)(1)(E)'s mandatory detention provision because both prongs are satisfied. Return at 2–3. As to the first prong, Respondents allege that Petitioner was found inadmissible under INA Section 212(a)(6)(A)(i), which was codified as 8 U.S.C. § 1182(a)(6)(A)(i) and is a provision listed in Section 1226(c)(1)(E)(i). *Id.* at 2. As to the second prong, Respondents contend that Petitioner's arrest for felony child abuse "under circumstances likely to result in great bodily harm or death" is a qualifying action relating to a qualifying crime under Section 1226(c)(1)(E)(ii). *Id.*

Petitioner, on the other hand, argues that he is not eligible for mandatory detention under Section 1226(c)(1)(E) because neither prong is satisfied: (1) Section 1226(c)(1)(E) does not apply to individuals paroled into the country under Section 1182(d)(5)(A), and (2) Petitioner's arrest under Cal. Penal Code § 273A(a) was neither a qualifying action nor a qualifying crime. Trav. at 2–4. The Court addresses each prong in turn.

//

//

### 1. Prong One

At issue is whether Petitioner's parole pursuant to 8 U.S.C. § 1182(d)(5)(A) precluded his subsequent inadmissibility finding under 8 U.S.C. § 1182(a)(6)(A) for presence without admission or parole, so as to make 8 U.S.C. § 1226(c)(1)(E)'s mandatory-detention provision inapplicable. *See* Trav. at 2–3.[1]

The Court acknowledges that the law remains unsettled as to whether Petitioner's October 2023 grant of humanitarian parole under Section 1182(d)(5)(A) precluded the IJ's July 2026 inadmissibility finding under Section 1182(a)(6)(A)(i) based on presence without admission or parole. Section 1182(d)(5)(A) gives the Secretary of Homeland Security discretion to grant humanitarian parole to certain "alien[s] applying for admission." 8 U.S.C. § 1182(d)(5)(A). The statute is clear about the effect of such parole on the recipient's admission status:

> [S]uch parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

//
//
//

---

[1] Petitioner's Form I-862 charges him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) for being "present in the United States without being admitted or paroled." ECF No. 6-2 at 1. Petitioner's Form I-213 from March 2026, however, charges him with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i) for being an applicant for admission without a valid entry document. *See* ECF No. 6-1 at 3. At the hearing on Petitioner's asylum claim in July 2026, the IJ found Petitioner inadmissible under Section 1182(a)(6)(A)(i). *See* ECF No. 6-3 at 1. Even if Petitioner was correct that his notice of parole constituted a valid entry document, this would theoretically only negate inadmissibility under 1182(a)(7)(A)(i) (lacking valid entry documents), not Section 1182(a)(6)(A)(i) (presence without admission or parole). *Cf. Gonzales v. I.N.S.*, 5 F. App'x 753 (9th Cir. 2001) (describing advance parole as "not a valid entry document within the meaning of 8 U.S.C. § 1182"). It is Petitioner's actual inadmissibility determination under Section 1182(a)(6)(A)(i) that is at issue here, so that will be the focus of this Court's analysis.

*Id.* Section 1182(d)(5)(A) makes clear that Petitioner's humanitarian parole did not qualify as admission, so it would not prevent a subsequent inadmissibility finding under Section 1182(a)(6)(A)(i) based on presence without *admission*.

What is less clear is whether Petitioner's prior grant of humanitarian parole prevented a subsequent inadmissibility finding based on presence without *parole*. *Compare Gonzalez v. Warden*, No. 1:26-cv-02877-JLT-EGC, 2026 WL 1707710, at *3 (E.D. Cal. June 12, 2026) (finding that first condition of Section 1226(c)(1)(E) was met where noncitizen was charged at entry as inadmissible under Section 1182(a)(6)(A)(i) even though he was subsequently paroled) *and Alencastro Cali v. Warden*, No.: 2:26-cv-1034-DC-EFB, 2026 WL 2240717 (E.D. Cal. Aug. 4, 2026) (finding the same based on humanitarian parole and a Section 1182(a)(7)(A)(i) inadmissibility determination) *with Ahmed v. Maldonado*, No.: 26-CV-3656 (OEM), 2026 WL 2042849 at *3 n.3 (E.D.N.Y. July 15, 2026) (acknowledging that petitioner's "grant of temporary humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) may render 8 U.S.C. § 1182(a)(6)(A)(i) inapplicable").

This Court declines to rule on this issue at present because, even assuming without deciding the first prong of Section 1226(c)(1)(E) is satisfied by Petitioner's July 2026 inadmissibility determination, the second prong is clearly not satisfied.

**2. Prong Two**

Petitioner argues that the second prong of Section 1226(c)(1)(E), requiring both a qualifying action and a qualifying crime, is not satisfied. Petitioner contends there is no qualifying action because Respondents have not met their evidentiary burden to show that Petitioner was actually charged with any crime. Trav. at 4–5. Petitioner further contends that there is no qualifying crime because Cal. Penal Code § 273a(a) does not require death or serious bodily injury. *Id.* at 3–4.

In full, the second prong of Section 1226(c)(1)(E) covers an individual who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in

death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii). A qualifying action, therefore, includes being charged with, arrested for, or convicted of—or having admitted to committing—a qualifying crime. However, many district courts, including in this district, have held that there is no qualifying action when an individual was merely arrested for, but never charged with, a qualifying crime. *See Acosta-Litardo v. Larose*, No.: 26-CV-4441 JLS (JAC), 2026 WL 2547410, at *2 (S.D. Cal. Aug. 28, 2026) (collecting cases); *Zhou v. Warden*, No.: 1:26-cv-06527-DAD-CSK, 2026 WL 2445606, at *2 (E.D. Cal. Aug. 20, 2026) (same).

Here, Petitioner alleges Respondents have failed to meet their evidentiary burden of showing that Petitioner was actually charged with the crimes for which he was arrested on March 22, 2026. Trav. at 4. Respondents allege that Petitioner does have pending charges "confirmed through a review … of Petitioner's NCIC." Return at 2 n.1. However, the only documentary evidence Respondents have offered in support of these allegations is Petitioner's Form I-213, which merely states that Petitioner was "arrested for" the listed crimes. *See generally* ECF No. 6-1. However, the Court need not determine whether the mere allegation of pending charges, absent documentary evidence beyond what Respondents have provided here, is sufficient to establish a qualifying action under Section 1226(c)(1)(e).

That is because Respondents have failed to establish that Cal. Penal Code § 273a(a) is a qualifying crime. District courts have interpreted Section 1226(c)(1)(E)'s application to any "crime that results in death or serious bodily injury to another person" to require that a crime *necessarily* result in death or serious bodily injury. *See Addemys N.R. v. Warden of California City Det. Facility*, No.: 1:26-cv-03892-MWJS, 2026 WL 1831763, at *2 (E.D. Cal. June 25, 2026) (finding that aggravated battery was not a qualifying crime under Section 1226(c)(1)(E) because, absent record evidence that the crime resulted in death or serious bodily injury, the criminal statute did not *require* such harm); *L.A. v. Warden*, No.: 1:26-cv-04971-RLP, 2026 WL 2327725, at *2 (E.D. Cal. Aug. 11, 2026) ("Petitioner's detention under the Laken Riley Act is only appropriate if the Texas criminal statute of

which he was convicted contains as an essential element a requirement that death or serious bodily injury result.").

Here, the applicable statute provides:

> Any person who, *under circumstances or conditions likely to produce great bodily harm or death*, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years.

Cal. Penal Code § 273a(a) (emphasis added). The plain text of the statue is clear: there is no requirement that death or serious bodily injury result, merely that such harm is *likely* to result. Because neither death nor serious bodily harm is an essential element of Cal. Penal Code § 273a(a) and because there is no evidence indicating such harm did result in Petitioner's case, this Court holds that Respondents have failed to allege a qualifying crime pursuant to the second prong of Section 1226(c)(1)(E). *See* 8 U.S.C. § 1226(c)(1)(E)(ii).

Petitioner is not subject to mandatory detention under Section 1226(c)(1)(E) because the second prong, requiring a qualifying action and a qualifying crime, is not satisfied. Because Section 1226(c)(1)(E) does not defeat Petitioner's claims, this Court may now turn to the alleged due process violations arising from the revocation of Petitioner's parole. *See Acosta-Litardo*, 2026 WL 2547410, at *3; *Zhou*, 2026 WL 2445606, at *3.

**B. Due Process**

Courts have identified various ways that a petitioner may be granted some form of parole. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No.: 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Here, Petitioner was granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). *See* ECF No. 6-5 at 2. In the context of 8 U.S.C. § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain due process rights under both procedural due process and the Administrative Procedure Act ("APA"). *See Y-Z-L-H v. Bostock*, 792

F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process where notice and opportunity to be heard were not given to a petitioner).

Further, courts have repeatedly held that liberty interests do not expire when parole does. "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). Rejecting similar arguments from the government, the court held that "this private interest did not expire along with Petitioner's parole agreement. Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process." *Id.*; *see also Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1179 (D. Nev. 2025) ("Petitioner has a fundamental interest in freedom from physical confinement, and that liberty interest is particularly strong given his initial release from detention in 2022, and the fact that Respondents did not seek his return to custody upon the expiration of his parole in December 2022, or in the three years since."); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025) ("[P]etitioner's liberty interest did not expire along with his parole.").

Here, Petitioner was granted parole after he entered and was processed in this country, creating a liberty interest protected by the Due Process clause. The liberty interest underlying that parole has not expired through any of the stages of his immigration case, including the automatic, time-based end of his parole. *See Ramirez Tesara*, 800 F. Supp. 3d at 1136. The Court disagrees with Respondents that an expiration of parole automatically extinguishes any due process claim. *See* Return at 5; *Rodriguez Cabrera*, 808 F. Supp. 3d at 1179 ("That the express terms of Petitioner's parole allowed for discretionary termination or expiration does not somehow obviate the need for the government to provide an individualized hearing prior to re-detaining him given the significance of his liberty interest."); *Omer G. G,* 2025 WL 3254999, at *5. Further, these liberty interests are particularly "weighty" where Petitioner relies on the government's

grant of release to take actions to build a life in this country—as Petitioner has done here. *Ramirez Tesara*, 800 F. Supp. 3d at 1136; *Rodriguez Cabrera*, 808 F. Supp. 3d at 1179 ("His interest in being free from confinement is particularly weighty, given his family and community ties within this country.").

As this Court explained in *Sanchez v. LaRose*, due process requires not only notice and opportunity to be heard, but also that the notice and opportunity be meaningful. No.: 25-cv-2396-JES-MMP, 2025 WL 2770629 at *3 (S.D. Cal. Sept. 26, 2025). Petitioner alleges that he was arrested and re-detained without notice or opportunity to be heard regarding the loss of his liberty interest. Pet. ¶ 28. Accordingly, the Court finds that Respondents violated Petitioner's due process rights when they re-detained him in March 2026.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus. Because the Court grants the petition on the Due Process ground and concludes that Respondents' revocation of Petitioner's parole violates procedural due process, Respondents are **ORDERED** to **immediately** release Petitioner from custody, subject to any conditions of his preexisting parole that existed at the time he was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **November 6, 2026**, confirming that Petitioner has been released. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: October 30, 2026

Honorable James E. Simmons Jr.
United States District Judge